UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA WEBB, | ) | CASE NO. 1:19-cv-0123 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge Kathleen B. Burke (Doc. No. 19 ["R&R"]) with respect to plaintiff's complaint for judicial review of defendant's denial of her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff Jessica Webb ("Webb") filed objections to the R&R (Doc. No. 20 ["Obj."]) and defendant filed a response to the objections (Doc. No. 21 ["Resp."])[1]. Upon *de novo* review and for the reasons set forth below, the Court hereby overrules plaintiff's objections, accepts the R&R, and dismisses this case.

I.  BACKGROUND

Webb protectively filed applications for SSI and DIB on January 17, 2016, alleging a disability onset date of February 28, 2015, based on severe anxiety, alcoholism/addiction, panic attacks, fear of public/isolation, shaking most of the day and night, insomnia, lightning jolts in her body, fear of phones ringing, depression, and rapid speech/stuttering/mind blanking out. (Doc. No. 12 (Transcript ["Tr."]) at 92, 157.)

---

[1] Defendant's response adds nothing to the analysis, as it merely "stands on the merits of [defendant's] brief[.]" (Resp. at 965.) [All page number references herein are to the page identification number generated by the Court's electronic docketing system.]

After Webb's applications were denied initially (*id*. at 276–79; 280–83) and upon reconsideration (*id*. at 286–88; 289–90), she requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 294–95). The hearing was conducted on December 8, 2017. Webb appeared and was represented by counsel; a vocational expert ("VA") also appeared. The hearing transcript is in the record. (*Id*. at 112–54.) On April 9, 2018, the ALJ issued his decision, determining that Webb was not disabled under the Social Security Act (the "Act"). (*Id.* at 89–105.) Webb requested review of the ALJ's decision by the Appeals Council, which denied her request on November 13, 2018, rendering the ALJ's decision final. (*Id*. at 76–78.)

Webb timely filed the instant action seeking judicial review. Represented by counsel, Webb filed a brief on the merits (Doc. No. 14 ["Pl. Br."]), defendant filed a response brief on the merits (Doc. No. 17 ["Def. Br."]), and Webb filed a reply (Doc. No. 18 ["Reply"]).

On October 21, 2019, Magistrate Judge Burke issued her R&R, recommending that defendant's decision be affirmed because substantial evidence supported the ALJ's finding of no disability.

## II. DISCUSSION

### A. Standard of Review

This Court's review of the Magistrate Judge's R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R&R to which objection is made. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to[]"); Local Rule 72.3(b) (any objecting party

shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections[]").

Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). If there is substantial evidence to support the defendant's decision, it must be affirmed even if the reviewing court might have resolved any issues of fact differently and even if the record could also support a decision in plaintiff's favor. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

**B.     Analysis**

**1.  Objection 1 - Failure to Support Weight Given Treating Physician**

Plaintiff's first objection relates to the R&R's analysis of the weight given to various physicians by the ALJ.

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (internal quotes and

citation omitted). In addition, the physician must have had an "ongoing relationship" with the claimant "at the time he rendered his opinion." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (emphasis removed).

An ALJ is "required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Gayheart*, 710 F.3d at 376 (citation omitted). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (citation omitted). "If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010).

### *Natalie Meyer, Psy.D. and Brittany Kelly, Ph.D.*

Plaintiff first challenges the comparative weight given to Dr. Natalie Meyer, Psy.D.[2] and Dr. Brittany Kelly, Ph.D.[3] (Obj. at 960.)

The ALJ stated that he would give *some* weight to the opinion of Dr. Meyer "because she had the benefit of examining the claimant and because of her area of specialty[,]" but that the weight would be *limited* "because the claimant had not been taking her psychotropic medications including her medication for anxiety at or near the time of [Dr. Meyer's] examination." (Tr. at 100.) The ALJ gave the opinion of Dr. Kelly "little weight . . . because she had only seen the

---

[2] Dr. Meyer is a clinical psychologist who saw Webb on June 1, 2016 for a psychological consultative evaluation. Webb was "referred for evaluation by the Ohio Division of Disability Determination (DDD) to assess her mental status as it relates to her claim for mental disability benefits." (Tr. at 607.) Dr. Meyer's full report is in the record. (Tr. at 606–16.)

[3] Dr. Kelly is also a clinical psychologist; she saw Webb the first time on January 14, 2016 for an initial clinical assessment. (Tr. at 556–59.)

4

claimant once by the time she completed the forms and because her input is not consistent with her findings on examination." (Tr. at 98.) In addition, the slightly lower weight assigned to Dr. Kelly's opinion was also due to the fact that "she did not have the benefit of reviewing the collateral information." (*Id.*)

The R&R approved the ALJ's conclusions. (R&R at 952.) In her objections, Webb seems to be challenging that approval on the theory that, although these medical professionals are both psychologists who each saw her only once, they were "not given the same deference." (Obj. at 960.) She claims this "provides proof that the ALJ was discounting any opinion which would not support his finding that [p]laintiff was not disabled." (*Id.* at 961.[4])

Webb offers no legal authority for her assertion that the opinions of two arguably similarly-credentialed medical professionals, neither of whom is a *treating* physician, must be accorded identical weight. Nor does she offer any basis in the record for challenging either the ALJ's weight determinations and/or the reasons he gave for those determinations, or for the R&R's discussion of those determinations. Moreover, and importantly, Webb seems to ignore that the ALJ did not give much weight to either of the two psychologists—according "limited" weight to Dr. Meyer's opinion and "little" weight to Dr. Kelly's opinion. The issue is not whether this Court would accord the same weight, but whether "'good reasons' supported the ALJ's decision to give Dr. [Kelly's] opinion little weight and Dr. [Meyer's] opinion limited weight." *O'Connell v. Comm'r of Soc. Sec.*, No. 16-1392, 2017 WL 4570466, at *2 (6th Cir. Feb. 27, 2017); *see also Tucker v. Comm'r*

---

[4] Without any citation to the record, Webb claims "[i]t is interesting to note that the State Agency reviewing psychologists placed great weight on the opinion of Dr. Meyer, but the ALJ accorded her only some weight." (Obj. at 961.) She faults the ALJ for this "contradiction[.]" (*Id.*) This Court need not address this passing "note" by Webb, since she has not provided any record evidence in support and the Court itself need not comb through the record for proof.

5

*of Soc. Sec.*, 775 F. App'x 220, 225, 226 (6th Cir. 2019) (rejecting claimant's characterization of differing levels of deference, such as "'little weight,' 'some weight,' 'partial weight,' and 'limited weight' as 'vague and ambiguous'" and reiterating that the standard was to "make a connection between the evidence relied on and the conclusion reached[]" and to "articulate[] [the] rationale for discounting [an] opinion").

Webb has failed to establish that the ALJ's treatment of the opinions of Drs. Meyer and Kelly, alone and/or by comparison, was not supported by substantial evidence.

### *Edward Craft, D.O.*

Next, Webb challenges the ALJ's decision, affirmed by the R&R, to give "little weight" to the opinion of Dr. Edward Craft, D.O., Webb's primary care physician. Although the opinions of treating physicians are *typically* given controlling weight, where, as here, the ALJ gave sufficiently specific reasons, based on the record, for assigning a different weight, the ALJ's assessment should be allowed to stand. *Gayheart*, 710 F.3d at 376.

Webb does not point to anything in the record that was ignored by the ALJ. She merely relies entirely on the "treating physician rule" to argue that, as her treating physician, Dr. Craft's opinion was entitled to "more than the limited weight provided by the ALJ." (Obj. at 961.) But that is not necessarily so. An ALJ is permitted to discount, or even reject, a treating physician's opinion so long as he provides "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. In this case, the ALJ did so.

When Dr. Craft's report of his encounter with Webb is read in context, it is clear he was of the view she needed a "more accurate" diagnosis than his (Tr. at 624), one provided by a psychiatrist (as he had previously unsuccessfully recommended (Tr. at 562)). Lacking that indepth psychological examination, Dr. Craft could do no more than make this recommendation, now

6

relied upon by Webb: "Regardless, *if* this is the [patient's] normal I would not recommend her working as she should be placed in tense [sic] [inpatient or outpatient] treatment." (Tr. at 624 (emphasis added).) The ALJ gave this recommendation little weight, relying upon "the fact that [Webb] was not placed in an 'intense' inpatient or outpatient program at any time." (*Id.* at 100.) In other words, Webb never sought the "more accurate" diagnosis Dr. Craft had recommended, which might have determined if her condition *was* her "normal" and rendered her unable to work.

The ALJ's weight determination as to Dr. Craft was supported by substantial evidence.

### ***Robyn Murry-Hoffman, Ph.D. vs. Irma Johnston, Psy.D and Paul Tangeman, Ph.D.***

Finally, relating to the State agency consultants, Webb faults the ALJ for ignoring the opinion of Dr. Murry-Hoffman and, instead, mentioning only the opinions of Drs. Johnston and Tangeman.

As the record shows, Dr. Murry-Hoffman, a state agency reviewer, conducted an initial medical review of Webb on March 18, 2016, and determined that Webb was disabled. The Office of Quality Performance ("OQP") conducted a further review,[5] concluding that the medical documentation was not sufficient to permit a determination and that additional psychological development was needed for an adequate decision. (Tr. at 156, 164; 174, 182.) Thereafter, Dr. Johnston completed an assessment, concluding that Webb, having in general only moderate restrictions, was not disabled and was able to work. (Tr. at 211; 232.) This conclusion was confirmed by Dr. Tangeman. (Tr. at 253; 272.)

---

[5] The OQP "reviews a sampling of state agency determinations for accuracy under 42 U.S.C. § 421 and 20 C.F.R. § 404.1640, *et seq.*" *Stanton v. Colvin*, No. 3:14-cv-1144 (GLS/ATB), 2015 WL 5841473, at *1 n.2 (N.D.N.Y. Oct. 7, 2015).

The R&R concluded that the ALJ had properly considered those "assessments that were completed following further development of the evidence." (R&R at 954.) In addition, it stated that "Webb has not shown that the ALJ did not consider Dr. Murry-Hoffman's assessment." (*Id.* (citing *Heintzelman v. Berryhill*, No. 4:16 CV 907 DDN, 2017 WL 4123052, at *6 (E.D. Mo. Sept. 18, 2017) (concluding that failing to cite an earlier opinion that was subsequently reviewed by OQP "does not, by itself, indicate that it was not considered by the ALJ[]").)

In her objections, Webb argues that "there is no way to guess if the ALJ considered the evidence as he failed to mention Dr. Murry-Hoffman's name or findings." (Obj. at 961–62.) This Court concludes there is no need to guess because Dr. Murry-Hoffman's opinion, based as it was on insufficient documentation (a finding not independently challenged by Webb), could not constitute substantial evidence. Webb has pointed to nothing in the record to suggest that, even if Murry-Hoffman's opinion had been considered by the ALJ, it would have necessarily outweighed the contrary opinions of Johnston and Tangeman. Put another way, Webb cannot show that Murry-Hoffman's opinion *could not* have been considered because, if it had been, the result would clearly have been different.

Plaintiff's basic theory is that the opinions of Dr. Murry-Hoffman and Drs. Johnston and Tangeman are comparatively inconsistent and, therefore, since the ALJ did not explicitly mention Murry-Hoffman, this inconsistency suggests an error in the ALJ's reasoning. But, just because the record evidence may point to two possible (and inconsistent) conclusions, does not require remand. If the ALJ's determination is supported by substantial evidence, as it is here, it does not matter whether this Court might have reached a different conclusion based on other evidence. *Crisp*, 790 F.2d at 453 n.4; *Buxton*, 246 F.3d at 772.

For the reasons discussed above, the Court finds no error in the R&R's reasoning with respect to the ALJ's weighing of the opinions of the medical professions. This objection is overruled.

**2. Objection 2 - Residual Functional Capacity (RFC) and the Step Five Analysis**

Webb's second objection is not entirely clear. She seems to suggest that the ALJ (and the R&R) failed to properly consider the testimony of the VA in response to hypothetical questions. She states:

> When Mr. Anderson [the VA] was asked questions incorporating [p]laintiff's limitations of never interacting with co-workers, he opined that there were no unskilled occupations such a person could perform (Tr. [150]). Mr. Anderson had similar testimony for a person who would need additional breaks totaling a person being off task more than twenty percent of a day or missing more than two days of work per month (Tr. [150-51]).

(Obj. at 962.) Webb offers no argument or analysis, no case law, and no further citation to the record or, for that matter, to the ALJ's opinion or the R&R, to explain the significance of the above testimony or why the ALJ's analysis was in error. In her original brief relating to RFC and Step Five, she relied upon the discredited opinion of Dr. Murry-Hoffman and upon the ALJ's failure to offer a hypothetical that included only occasional handling and fingering, given her documented shaking. (Pl. Br. at 880–81.)

While Webb's objection accurately reflects the VA's testimony in response to hypotheticals, that testimony was rendered moot because, based on the full record, the ALJ generally concluded that Webb's "symptoms and limitations are not as severe as alleged[,]" noting that she "has not required or received intensive outpatient mental health services and she has not required or received frequent care for any medical condition." (Tr. at 102.) In addition, the ALJ found that Webb "is more active and more capable than alleged." (*Id.* at 103.) He gave weight to

the opinion of Dr. Hinzman (which is unchallenged here) that she "retains the ability to perform light exertional work and no unprotected heights." (*Id*. (citation omitted).) Even so, the ALJ considered Webb's "non-severe physical impairments and her symptoms including shakiness[,]" and, therefore, "added some postural limitations, some environmental limitations, and frequent handling and fingering[,]" as well as "the limitation of no interaction with the public." (*Id.*) The ALJ ultimately determined: "[Webb's] subjective complaints and alleged limitations are not fully persuasive and she retains the capacity to perform work activities with the limitations set forth above." (*Id.*)

Aside from merely noting her "disagreement with [the ALJ's or the R&R's] suggested resolution, or simply summariz[ing] what has been presented before," *Aldrich*, 327 F. Supp. 2d at 747, Webb's sparse objection fails to specifically identify any error with reference to the record and controlling case law and/or regulations.

This objection is overruled.

## III. CONCLUSION

For the reasons discussed above, plaintiff's objections to the R&R are overruled. The R&R is accepted. Because the defendant's decision was supported by substantial evidence, that decision is affirmed. This case is closed.

**IT IS SO ORDERED**.

Dated: December 9, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**